UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT LEROY DATTILO, <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, <br> Defendant. | Case No. 5:16-cv-05552-HRL <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 21, 24 |

Plaintiff Scott Leroy Dattilo appeals a final decision by defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (Act). The parties have filed cross-motions for summary judgment, and the matter was submitted without oral argument.[1] Upon consideration of the moving and responding papers, and for the reasons set forth below, plaintiff's motion is denied and defendant's cross-motion is granted.[2]

---

[1] Plaintiff's reply brief was filed about two weeks late. Although the court has accepted and considered those papers, it does not condone plaintiff's tardiness and admonishes counsel against future noncompliance with court-ordered deadlines.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

**BACKGROUND**

Dattilo was born in 1960 and was 54 years old at the time the administrative law judge (ALJ) rendered the decision under consideration here. After completing high school, plaintiff worked as a carpenter and painter. Dattilo claims that in 2012, he suffered a workplace injury while installing wall panels. Diagnostic imaging of Dattilo's lumbar spine in 2012 revealed multilevel disc desiccation, annular tear, and disc bulge, with bone spurring, facet arthropathy, and mild to moderate foraminal narrowing. (AR 306). Additionally, imaging of plaintiff's cervical spine showed C6-7 disc desiccation and disc protrusion indenting the thecal sac and impinging on the exiting ventral nerve, along with mild cervical arthropathy or bone spurring with no significant foraminal stenosis. (AR 305).

Dattilo applied for disability insurance benefits and supplemental security income, alleging that he was disabled since July 31, 2012. His application was denied initially and upon reconsideration, and Dattilo requested a hearing before an ALJ.

At the hearing, plaintiff testified that he cannot work due to chronic neck pain radiating down his back and leg. He also complained of leg numbness and said that he wakes up every morning with neck pain and headaches. He further stated that he cannot keep his head turned to the side for too long without his neck cramping up and hurting, and that he suffers from anxiety and depression. The ALJ also received testimony from a vocational expert (VE). He subsequently issued a decision concluding that Dattilo is not disabled under the Act.

The ALJ found that plaintiff met the insured status requirements of the Act through September 30, 2016 and that he had not engaged in substantial gainful activity since the alleged onset date of July 31, 2012. The ALJ further found that Dattilo has the following severe impairment: degenerative disc disease of the lumbar and cervical spine. However, the ALJ found that plaintiff's alleged mental impairments were not severe and that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). The ALJ further found that Dattilo has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §

404.1567(b) and § 416.967(b), with certain postural limitations. Although the ALJ found that Dattilo cannot perform any past relevant work, he concluded that plaintiff has skills that are transferrable to other work and that he can perform other work existing in significant numbers in the national economy, namely: salesperson, general hardware, Dictionary of Occupational Titles (DOT) 279.357-050.

The Appeals Council denied Dattilo's request for review, and the ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision, arguing that the ALJ (1) erred in finding that his mental impairments are not severe; (2) failed to consider the "combined impact" of his impairments; (3) failed to provide "mental protections" that Dattilo claims are required by regulation; (4) improperly discounted plaintiff's credibility; and (5) did not properly apply the Medical-Vocational Guidelines. Dattilo also contends that the ALJ violated his due process rights. The Commissioner contends that the ALJ's decision is correct and free of legal error.

**LEGAL STANDARD**

**A. Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance---it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

3

**B. Standard for Determining Disability**

The Social Security Act (Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the impairment must be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," considering the claimant's age, education, and work experience. Id., § 423(d)(2)(A).

In determining whether a claimant has a disability within the meaning of the Act, an ALJ follows a five-step analysis:

1. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(b). If so, the claimant is not disabled. If not, the analysis proceeds to step 2.

2. At step two, the ALJ must assess whether the claimant suffers from a severe "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. at §§ 404.1520(a)(4)(ii), 416.920(c). If not, the claimant is not disabled. If so, the evaluation proceeds to step three.

3. At step three, the ALJ determines whether the claimant's impairments or combination of impairments meets or medically equals the requirements of the Listing of Impairments. Id., §§ 404.1520(a)(4)(iii), 416.920(d). If so, the claimant is disabled. If not, the analysis proceeds to step four.

4. At step four, the ALJ determines whether the claimant has the RFC to perform past work despite her limitations. Id. §§ 404.1520(a)(4)(iv), 416.920(e), (f). If the claimant can still perform past work, then he is not disabled. If not, then the evaluation proceeds to step five.

5. At the fifth and final step, the ALJ must determine whether the claimant can perform other substantial gainful work available in the economy, considering the claimant's

4

RFC, age, education, and work experience. Id., §§ 404.1520(a)(4)(v), 416.920(g). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four; the Commissioner has the burden at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

## DISCUSSION

### A.  The ALJ did not err in finding that Dattilo's alleged mental impairments were not severe

While the ALJ acknowledged, at step 2 of the sequential analysis, that Dattilo alleged anxiety and depression, he concluded that "these mental impairments do not limit his ability to perform basic mental work activities and are, therefore, nonsevere." (AR 13). Plaintiff contends that this was error, arguing that the ALJ ignored evidence and failed to provide support for his findings. The court finds that the ALJ properly evaluated the evidence and that his conclusion is supported by substantial evidence.

The ALJ acknowledged that in 2012, Dr. Tariq Mirza, plaintiff's pain management provider, "diagnosed depression and anxiety after his workplace injury and prescribed Xanax," but correctly noted that Dattilo reported to Dr. Mirza that Xanax reduced his anxiety and that he felt less angry. (AR 13-14, 329, 336, 355, 365). The ALJ also correctly observed that plaintiff "only received anxiety medication from a workers' compensation pain specialist and has not been treated for any mental impairment by a mental health specialist or even a primary care doctor." (AR 13, 15).

Additionally, the ALJ considered and gave significant weight to the opinion of psychiatric consultative examiner, Dr. Maria Acenas, who examined Dattilo in August 2013 and noted plaintiff's depressed mood and stated that he could benefit from some psychotherapy. (AR 14, 365). However, the ALJ correctly noted that plaintiff's mental status exam was otherwise normal and that Dr. Acenas diagnosed him only with a physical condition causing psychological symptoms. (Id.). Indeed, she concluded that, based on his mental capabilities, Dattilo "will be able to perform work on a consistent basis, maintain a regular attendance and finish normal workweek" and "will likewise also be able to deal with the usual stress encountered in a

competitive workplace." (AR 365). And, as the ALJ noted, other documented mental status exams in the record reveal normal mood and affect; and State agency psychological consultants also found that plaintiff's anxiety was nonsevere. (AR 14, 56, 69, 83-84, 95-96, 421, 432).

Dattilo argues that the ALJ overlooked records from his primary care physician, Dr. Susan Campbell, whom plaintiff says he saw for the treatment of depression. Although this particular portion of the ALJ's decision does not reference Dr. Campbell,[3] the record indicates that she saw plaintiff once in November 2014 for the purpose of "establish[ing] primary care," that plaintiff's chief complaint was of neck pain and "popping," and that Dr. Campbell described Dattilo as "Pleasant adult in no acute distress, Well nourished, Well developed, Normal affect." (AR 404-05). Moreover, in her Residual Functional Capacity Questionnaire, Dr. Campbell wrote "unknown" in response to questions asking about emotional factors or psychological conditions affecting plaintiff. (AR 442-43).

The ALJ also accurately summarized the record evidence in concluding that Dattilo's mental impairments resulted in only mild limitations:

> In making this finding, the undersigned considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas, known as the "paragraph B" criteria, are as follows: activities of daily living; maintaining social functioning, maintaining concentration, persistence or pace; and episodes of decompensation of extended duration.
>
> In activities of daily living, the claimant has mild restriction. The claimant states that he has no problems with personal care and stated to Dr. Acenas that he was capable of performing personal grooming and hygiene tasks (Exhibits 7E, p. 6; 3F, p. 2). While he stated in a function report that he did not prepare meals or do housework, he stated elsewhere that he was able to do light housekeeping, as well as cook, clean and do laundry (Exhibits 4E, p. 5; 7E, p.7; 3F, p. 2). His girlfriend, Donna Malone, also states that he does light household chores and waters the lawn (Exhibit 5E, p. 7). Additionally, the claimant admits that he shops twice per month for food, for 60-90 minutes at a time (Exhibit 7E, p. 8). Accordingly, the undersigned has determined that the claimant has only mild limitations in his activities of daily living.
>
> In social functioning, the claimant has mild difficulties. The claimant testified at the hearing that he does not have many friends, but also

---

[3] As will be discussed below, the ALJ did, in fact, consider Dr. Campbell's records in rendering his decision.

6

> stated that his neighbors are friendly. He admitted elsewhere that he has no problems getting along with others and gets along well with authority figures (Exhibit 7E, p. 10-11). He also states that he visits his mother twice or three times per week and Dr. Acenas observed that he was friendly and cooperative (Exhibits 7E, p. 9; 3F, p. 2). The claimant additionally told Dr. Acenas hat he socialized with friends (Exhibit 3F, p. 2). The undersigned has thus concluded that the claimant has only mild limitations in terms of social functioning.
>
> With regard to concentration, persistence or pace, the claimant has mild difficulties. The claimant alleges that he does not handle stress or changes in routine well, but admits he can follow written and spoken instructions well (Exhibit 7E, pp. 10-11). Ms. Malone states that he can pay attention all day and Dr. Acenas observed that he was able to remember two out of three objects in three minutes (Exhibits 5E, p. 10; 3F, p. 3). The undersigned has accordingly determined that the claimant has only mild limitation in this regard.
>
> Finally, in the fourth area, there is no evidence indicating the claimant has experienced any episodes of decompensation of extended duration.

(AR 14, 205, 220, 223, 247-48, 250-52, 364-65).

The court finds no error here.

### B. The ALJ properly considered plaintiff's impairments

Generally, regulations at 20 C.F.R. § 404.1529 and § 416.929 provide that the Commissioner will consider "all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Citing Beecher v. Heckler, 756 F.2d 693 (9th Cir. 1985), plaintiff argues that the ALJ was required to consider the "combined impact" of his impairments. The import of Beecher is that medical reports that only consider a claimant's physical impairments do not amount to substantial evidence for a finding of not disabled where the claimant is found to suffer from both physical and psychological problems. Id. at 694. The error in Beecher was that the ALJ failed to consider the report of a psychiatrist and neurologist who expressed doubt that the claimant would be able to work. Id. at 695. Dattilo also cites Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003) in which the court concluded that the ALJ was required to consider the "interactive effect" of the claimant's obesity on her other impairments. The problem in Celaya was that the ALJ failed to give any consideration to the claimant's obesity.

7

Here, unlike in Beecher and Celaya, the ALJ thoroughly considered and accurately summarized the evidence, including Dattilo's medical history, all medical evidence as to both plaintiff's physical impairments and mental status, and statements about how plaintiff's symptoms affect him. (AR 13-19). Plaintiff nevertheless says that Dr. Campbell "finds both mental and physical combined are limiting Dattilo" and "also notes depression, chronic migraine pain." (Dkt. 21, Pltf's MSJ at ECF p. 29). The court sees no such finding in the portion of the record plaintiff cites. In any event, the ALJ considered Dr. Campbell's records and gave them less weight---a determination that plaintiff does not challenge. Noting that Dr. Campbell saw Dattilo only once in November 2014, the ALJ correctly observed that Dr. Campbell's Residual Functional Capacity Questionnaire merely restates the findings from her single examination of Dattilo and that she did not complete the portion of the form concerning any limitations. (AR 18, 441-45).

The court finds no error here.

### C. The ALJ did not fail to provide "mental protections"

Dattilo argues that the ALJ failed to adhere to a "heightened duty" to use "special procedures" and to provide "mental protections" he says are required for evaluating mental impairments under 20 C.F.R. § 404.1520a and § 416.920a.[4] Those regulations require an ALJ to rate the degree of functional limitations in four areas: ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. As discussed above, the ALJ expressly considered those factors and properly assessed the evidence in evaluating Dattilo's mental impairments. Plaintiff does not address those findings. The court finds no error here.

### D. The ALJ did not improperly discount plaintiff's complaints of pain

Dattilo argues that, in partially discounting his subjective complaints of pain, the ALJ failed to evaluate the evidence and simply concluded, in summary fashion, that Dattilo's pain allegations were not entirely credible.

---

[4] The court assumes that plaintiff intended to cite to 20 C.F.R. § 404.1520a and § 416.920a, rather than to 20 C.F.R. § 404.1520(a) (discussing the evaluation of disability in general) and § 416.908 (a "reserved" statutory section) that actually are cited in his brief.

8

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In assessing subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.2008) (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir.1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" Id. (quoting Smolen, 80 F.3d at 1283-84). That is, the ALJ must "make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Id. (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir.2002)). In weighing a claimant's credibility, an ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" Tommasetti, 533 F.3d at 1039 (quoting Thomas, 278 F.3d at 959).

Here, the ALJ concluded that although Dattilo's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the severity of his symptoms and limitations were greater than expected in light of the objective evidence. (AR 16). The ALJ reasoned that physical examinations contained mild findings and that there is insufficient evidence to support Dattilo's testimony that his pain radiates from his neck or lumbar spine and causes numbness in his legs, or that he suffers daily headaches. Noting that Dattilo "was at all times diagnosed only with cervical and lumbar strain/sprain and chronic neck pain," the ALJ further found that "[t]he mild nature of these diagnoses is consistent with the lack of physical examination findings indicating significant limitations." (AR 17-18).

9

Inasmuch as the ALJ acknowledged that Dr. Mirza also diagnosed Dattilo with sciatica, the ALJ's statement that plaintiff was only diagnosed with cervical and lumbar strain/sprain and chronic neck pain is not accurate. Nevertheless, viewing the record as a whole, the court concludes that the ALJ's credibility determination is supported by substantial evidence in the record.

The ALJ noted that diagnostic imaging by Dr. Satterfield showed mild impairment after Dattilo's workplace injury in 2012. (AR 16-17, 305-06). Even so, the ALJ correctly observed that Dattilo's chiropractor noted overall improvement with conservative chiropractic treatment and that Dattilo apparently received no care between April 2013 and October 2014. (AR 17, 298).

The ALJ also acknowledged that Dr. Mirza diagnosed cervical and lumbar strain and sciatica, but correctly observed that Dr. Mirza's initial examination in September 2012 showed Dattilo to be in no acute distress. (AR 17, 353-54). Although Dr. Mirza found cervical spine tenderness, the ALJ correctly noted that Dattilo was found to have full range of motion, no evidence of radiating pain and intact sensation in the upper extremities, as well as normal motor strength. (Id.). The ALJ acknowledged that examination showed tenderness in plaintiff's lumbar spine, but with a nearly full range of motion, normal gait, normal heel to toe walking, positive straight leg raising only on the left side, normal motor strength in the lower extremities and intact sensation. (Id.).

Additionally, the ALJ correctly observed that every subsequent examination conducted by Dr. Mirza (six times between August 2012 and April 2013), yielded identical results and diagnoses with no change; that Dattilo stated in November 2012 that his anxiety was more debilitating than his pain; and that Dattilo reported in early 2013 that his morning neck pain decreased as he moved around during the day. (AR 17, 309-11, 315-18, 323-25, 330-32, 336-39, 344-46).

The ALJ also considered that in October 2014, plaintiff apparently sustained a new injury and went to the emergency room due to reported neck pain from hitting his head while climbing a ladder. But, diagnostic imaging was mild or unremarkable. (AR 17, 420, 425). And, a physical examination revealed cervical and lumbar tenderness, but no crepitus in the neck, full range of

motion, normal motor strength in the extremities, and a normal neurological examination. (AR 17, 421-22). Further, Dattilo was observed to be in no acute distress and declined pain medication. (AR 17, 422).

Pointing out that he was prescribed medication for severe pain, Dattilo contends that the ALJ failed to consider Dr. Campbell's statements that Dattilo has "chronic neck pain. Last few months, his neck clicks a lot and causes a lot of pain. Neck is always tight but doesn't radiate down to arms. When turning head either direction, it pops. Pain is only on left side." (AR 404). Those statements, however, are not Dr. Campbell's findings, but her summary of plaintiff's subjective complaints. In any event, the ALJ did consider Dr. Campbell's report of her one examination of Dattilo in November 2014. He correctly noted that Dr. Campbell's examination revealed no spinal tenderness. (AR 17, 405). The ALJ further noted that while Dr. Campbell's treatment notes indicated some cervical spasm and limited range of motion secondary to pain, she also found normal strength and sensation in the upper extremities. (Id.). The ALJ also acknowledged Dr. Campbell's diagnosis of chronic neck pain, but correctly observed that subsequent x-rays of the cervical spine in December 2014 showed only slight degenerative changes at C3-5 and at the facet joints. (AR 17, 391, 405).

Dattilo subsequently completed a physical therapy examination in December 2014, and the ALJ says that Dattilo was found to be less than 20 percent impaired by his neck pain (AR 17, 386), but correctly notes that no further records were submitted to indicate any additional treatment.

Moreover, the ALJ correctly observed that no treating or examining medical source endorsed the degree of limitation Dattilo alleged or assessed more restrictive functional limitations than those found by the ALJ. (AR 19).

The ALJ gave sufficiently specific reasons supported by substantial evidence for partially discrediting plaintiff's pain testimony. The court finds no error here.

**E.    The ALJ properly applied the Medical-Vocational Guidelines**

Dattilo contends that the ALJ did not properly apply the Medical-Vocational Guidelines, commonly referred to as "the grids." Plaintiff does not argue that his limitations rendered the

11

grids generally inapplicable. Rather, he contends that the ALJ did not properly consider his age; made contradictory findings in concluding that he could perform light work; and erred in finding that he has skills that are transferrable to other work.

At step five of the sequential analysis, the Commissioner bears the burden to demonstrate that there are a significant number of jobs in the national economy that the claimant could perform. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). The Commissioner can meet that burden in two ways: (1) through VE testimony or (2) by applying the grids, which "present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." Id. at 1100-01.

The grids categorize physical exertional requirements as "sedentary work," "light work," and "medium work" and "present[] various combinations of factors relevant to a claimant's ability to find work"---i.e., the claimant's age, education, and work experience. Tackett, 180 F.3d at 1101. "For each combination of these factors, . . . the grids direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." Id. "The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations." Id. "In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." Id.

If a claimant has only exertional limitations, use of the grids is mandatory; and, an ALJ may not come to a different finding than that directed by the grids. Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006). If a claimant suffers only non-exertional limitations, the grids do not apply and the ALJ must rely on other evidence. Id. "Examples of non-exertional limitations are pain, postural limitations, or environmental limitations." Tackett, 180 F.3d at 1102. Where a claimant suffers from both sufficiently severe exertional and non-exertional limitations, the ALJ must consult the grids first and---if the grids do not classify the claimant as disabled---rely on other evidence to separately examine the non-exertional limitations. Lounsburry, 468 F.3d at 1115. If non-exertional limitations are sufficiently severe to preclude a claimant from performing the full range of work in any exertional category, the ALJ must consult a VE. Hoopai v. Astrue,

499 F.3d 1071, 1076 (9th Cir. 2007); Burkhart v. Bowen, 856 F.2d 1335, 1341 (9th Cir. 1988).

Here, the ALJ concluded that Dattilo has the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain postural limitations---namely, that he is only "occasionally able to balance, stoop, kneel, crouch, crawl, climb ramps and stairs, and climb ladders, ropes, and scaffolds; and is occasionally able to perform overhead reaching with the bilateral upper extremities." (AR 15). Noting that Dattilo was 51 years old as of the alleged disability onset date, the ALJ found that plaintiff was an individual closely approaching advanced age, with at least a high school education and the ability to communicate in English. (AR 19). While the ALJ found that Dattilo could not perform his past relevant work, he concluded that plaintiff has skills that are transferrable to other work. Having found plaintiff to have an RFC to perform less than the full range of light work, the ALJ consulted a VE about whether jobs existed in the national economy for an individual of plaintiff's age and with his education, work experience, and RFC. (AR 20, 44-45). The VE testified that Dattilo could perform general hardware salesperson jobs, with 4,300,000 such jobs in the national economy. (AR 45). Based on that testimony and the record as a whole, the ALJ concluded that "although the claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate under the framework of the Medical-Vocational Rule 202.15." (AR 20).

### 1. Dattilo's age

Plaintiff argues that the ALJ incorrectly considered that he was 51 years old as of the alleged onset of his disability. (AR 19). Although plaintiff does not dispute that this is an accurate statement of his age at that time, he contends that the ALJ should have instead noted that he was 54 years old at the time the ALJ rendered his decision. Because he did not do so, Dattilo says that the ALJ failed to consider that, when the decision issued, plaintiff was four months away from turning 55 years old---and, hence, falling within the "advanced age" category under the grids. While plaintiff acknowledges that the ALJ was not obliged to apply the "advanced age" category, he contends that the ALJ erred by failing to consider whether to apply it.

"For purposes of applying the grids, there are three age categories: younger person (under

age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older)." Lockwood v. Comm'r Social Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010); see also 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e). The court agrees that generally, a claimant's age should be considered as of the time of the Secretary's final decision---here, the date of the ALJ's decision. Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988); 20 C.F.R. § 404.981. But, in this case, it would have made no material difference whether the ALJ stated that plaintiff was 51 or 54, since both ages are in the same "closely approaching advanced age" category under the grids.

Dattilo nevertheless argues that the ALJ failed to consider whether to apply the "advanced age" category under the grids. Regulations provide that the Commissioner "will not apply the age categories mechanically in a borderline situation." 20 C.F.R. §§ 404.1563(b), 416.963(b). Rather, if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant] is disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors in [the claimant's] case." 20 C.F.R. §§ 404.1563(b), 416.963(b). "It is clear from the text of this regulation that an ALJ is not *required* to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category." Lockwood, 616 F.3d at 1071. Nor is an ALJ obliged to explain in a written decision why an older age category was not used. Id. at 1069. Instead, an ALJ is "required by regulation only to *consider* whether to use the older age category." Id.

Although plaintiff argues that the ALJ failed to consider his actual age, the ALJ's decision states Dattilo's birthdate, which indicates that the ALJ was aware that plaintiff was 54 years old and months away from turning 55, at which point he would become a person of "advanced age" under the grids. (AR 19). The ALJ also cited 20 C.F.R. § 404.1563 and § 416.963, which prohibits him from applying the age categories mechanically in a borderline situation. Id.. In Lockwood, the same type of evidence was deemed sufficient to show "that the ALJ knew [he] had discretion 'to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case.'" Lockwood, 616 F.3d at 1072 (quoting 20 C.F.R. § 404.1563(b)).

14

Moreover, as in Lockwood, the ALJ here evaluated all of the factors (i.e., physical ability, age, education, and work experience) in relying on the VE's testimony before finding that Dattilo was not disabled.

Dattilo argues that HALLEX, an internal Social Security Administration manual, requires a borderline age category analysis where, as here, a claimant has no past relevant work. Further, he contends that the ALJ should have followed rule DI 25015.006 of the Programs Operations Manual System ("POMS"), which he says provides that borderline age is a period not to exceed six months. "However, HALLEX does not impose judicially enforceable duties on either the ALJ or this court." Lockwood, 616 F.3d at 1072. While POMS, which constitutes agency interpretation, may be entitled to respect to the extent it provides a persuasive interpretation of a regulation, it also "does not impose judicially enforceable duties on either this court or the ALJ." Lockwood, 616 F.3d at 1073. Dattilo fails to persuade why reliance was required on HALLEX or the identified POMS guidance.

The court finds no error here.

### 2. Dattilo's RFC

Dattilo contends that the ALJ's findings re his ability to perform light work are either wrong or contradictory, because the ALJ concluded that plaintiff has additional limitations that do not allow him to perform the full range of light work. As discussed, having found plaintiff to have an RFC to perform less than the full range of light work, the ALJ consulted a VE about whether jobs existed in the national economy for an individual of plaintiff's age and with his education, work experience, and RFC. (AR 20, 44-45). Based on that testimony and the record as a whole, the ALJ concluded that plaintiff was not disabled. To the extent plaintiff is now challenging the ALJ's RFC assessment, he fails to demonstrate a basis for reversal.

As discussed above, the ALJ properly considered the medical evidence and reasonably concluded that they did not support functional limitations greater than Dattilo's RFC. (AR 17). Among other things, the ALJ noted that plaintiff's examinations generally yielded normal results, with mild positive findings re tenderness and some reduced range of motion; that plaintiff was not found to be in acute distress; that October 2014 x-rays of plaintiff's cervical spine were

unremarkable; and that December 2014 x-rays showed only a "slight" degenerative change. (AR 17, 391, 425). Additionally, the ALJ correctly noted that "no treating or examining medical source endorsed the degree of limitation alleged by the claimant or assessed more restrictive functional limitations than those determined in this decision." (AR 19).

Plaintiff nonetheless maintains that he cannot perform light work and that this is supported by the 2012 diagnostic imaging of his cervical and lumbar spine after his work injury, as well as by Dr. Campbell's records. However, the ALJ fully considered the 2012 diagnostic imaging, along with all other medical evidence in the record. And, while Dr. Campbell's RFC Questionnaire states that plaintiff has "chronic pain due to degenerative joint disease of C-spine," she also notes that she saw plaintiff only one time in November 2014, and she expressly declined to complete the portion of the form concerning Dattilo's functional abilities. (AR 441, 445).

The court finds no error here.

### 3. Transferrable Skills

Based on the VE's testimony, the ALJ found that Dattilo possessed the transferrable skills of "knowledge of building processes, materials and tools for construction," and that he could make a successful adjustment to other work as a general hardware salesperson, DOT 279.357-050. (AR 19-20). Plaintiff acknowledges that he has the identified skills based on his past work experience.[5] But, he says that he has no sales experience and thus, the ALJ erred in finding that he had skills transferrable to the identified job.

"A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." Titles II & XVI: Work Skills & Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective Feb. 26, 1979, SSR 82-41 (S.S.A.1982), 1982 WL 31389 at *2. "Transferability means applying work skills which a person has demonstrated in

---

[5] Plaintiff takes issue with the VE's testimony that Dattilo also "knows how to build a room, house, from foundation to finish." (AR 45). However, that is not one of the skills the ALJ identified in his decision. And, as discussed above, plaintiff concedes he has the skills the ALJ attributed to him.

16

vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." Id. When a claimant is found to have transferable skills, the ALJ must identify the acquired work skills and specific occupations to which the acquired work skills are transferrable. Id. at *7. Evidence that the specified jobs exist in significant numbers in the national economy should be included, and this evidence may be VE statements based on expert personal knowledge. Id. A skill is likely to be transferrable to a new job when (1) the new job requires the same or a lesser degree of skill than the old one; (2) the same or similar tools and machines are used in both jobs; and (3) the same or similar raw materials, products, processes or services are involved in both jobs. Id. at *5. However, "complete similarity of all these factors is not necessary." Id.

Here, the ALJ properly relied on VE testimony, identified the acquired work skills, and specified the work to which he found those skills were transferrable. Dattilo does not challenge the ALJ's findings that plaintiff's past carpentry job was semi-skilled with a specific vocational preparation (SVP) code of 7 and that the VE testified that the general hardware salesperson job has an SVP of 4. (AR 19-20, 45). Thus, the salesperson job would not require plaintiff to use a greater degree of skill than jobs that he previously held. Plaintiff nevertheless maintains that his past work skills do not directly correlate to all skills required for the identified sales job, arguing that he would have to learn sales-related skills and about other kinds of tools. Plaintiff's RFC, however, did not include any cognitive or social-functioning limitations. And, because Dattilo was a person "closely approaching advanced age," the ALJ was not required to show that there was "very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f).[6]

The court finds no error here.

### F. The ALJ did not commit due process violations

While Dattilo challenges the ALJ's application and interpretation of various regulations, he does not challenge their validity and fails to establish any error rising to the level of a

---

[6] Defendant also points out that under grid rules 202.14 and 202.15, the grids would have directed a finding of "not disabled" whether or not plaintiff was found to have transferrable skills. That argument is accurate, so far as it goes. But, as discussed, VE testimony was required since the ALJ found that plaintiff could not perform the full range of light work.

17

constitutional violation.  In any event, in view of the court's review of the record and the rulings set out above, plaintiff's due process arguments are without merit.

**ORDER**

Based on the foregoing, plaintiff's summary judgment motion is denied, and defendant's cross-motion is granted.  The clerk shall enter judgment and close the file.

SO ORDERED.

Dated:   February 12, 2018

HOWARD R. LLOYD
United States Magistrate Judge